UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEXTER MAIN and FRANCESCO D'AMELIO, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SWEETHEARTS CANDY CO. LLC and ROUND HILL INVESTMENTS LLC,<br><br>Defendants. | CIVIL ACTION NO.: 18-11586-ADB |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants agree the determinative issue is whether they purchased the NECCO business as a going concern. That Defendants may have intended to sell some of the business in the future is of no import. That Defendants reimbursed the bankruptcy trustee for the employees' wages and "deemed" them employees of the bankruptcy trustee, not Defendants, is of no legal effect. Defendants purchased the NECCO business as a going concern. They bought all the assets and materials to make candy; they operated the plant and made candy; and they paid the employees to make that candy. They were required to give the employees notice before closing the plant and it is undisputed Defendants failed to give notice, in violation of the WARN Act.

**I.      DEFENDANTS HAVE NO VIABLE LEGAL DEFENSE.**

Defendants have no viable legal defense. The only defense to summary judgment "raised" is Defendants' proffer of a purported March 6, 2018 WARN letter sent by NECCO, prior to the closing of the sale of the business to Defendants. Shamah Aff., Ex. 1. But pursuant to the express provisions of the WARN Act regulations, such notice expired as a matter of law and was of no effect at the time of the shutdown:

1

> **§ 639.10 When may notice be extended?**
> <u>**Additional notice is required**</u> when the date or schedule of dates of a planned plant closing or mass layoff is extended beyond the date or the ending date of any 14-day period announced in the original notice as follows…(b) If the postponement is for 60 days or more, the additional notice should be treated as new notice subject to the provisions of §§ 639.5, 639.6 and 639.7 of this part… 20 CFR § 639.10 (emphasis added).

There is no factual dispute regarding the timing of the March 6, 2018 notice. The ending date of that notice was 74 days from March 6, 2018, or May 19, 2018. SOF ¶ 14; Shamah Aff. Ex. 1. The shutdown occurred on July 24, 2018, more than 60 days after the ending date in the March 6, 2018 notice. Therefore, pursuant to the express WARN Act regulations, additional "new notice" was required. <u>See</u> 20 CFR § 639.10(b). There is no factual dispute that no new WARN notice was provided to the employees. SOF ¶ 13.

Defendants now disclaim any "business circumstance" defense. Def. Opp., p. 16. Defendants raise no other defense. Thus, the only determinative issue of WARN Act liability is whether Defendants purchased "part or all of [the NECCO] business," as a going concern; if so, the workers are "considered an employee" of Defendants as a matter of law, and Defendants were thereafter required to comply with the WARN Act. <u>See</u> 29 U.S.C. § 2101(b)(1).

## II. THE DEFENDANTS PURCHASED A GOING CONCERN AND LATER SHUT DOWN THE OPERATIONS WITHOUT NOTICE TO THE EMPLOYEES.

Defendants assert that they merely allowed the bankruptcy trustee to continue to operate the facility with his own employees after the closing of the sale to Defendants, in the hopes that Defendants could command a higher price when later selling off the business. Defendants argue that they therefore never purchased the NECCO business as a "going concern." That argument not only fails to absolve Defendants of liability, it concedes that the operations continued after

Defendants purchased all of the assets, materials, accounts, licenses and other means required to continue production.

Defendants gloss over the undisputed facts that:

- Defendants purchased all of the NECCO bankruptcy estate's assets essential to ongoing operations of the business – including all accounts receivable, all "raw materials, work-in-process and finished goods, and other items of inventory," equipment, warranties, bank account, and all "licenses, permits authorizations" necessary to operate (SOF ¶ 32; APA § 1.1);
- the facility continued to operate after the closing of the sale and in fact more than 100 employees were working at the facility making candy at the time of the shutdown (SOF ¶ 11; TSA § 1.1 );
- after continuing the candy-making operations at the facility, Defendants announced the shutdown and operations ceased (SOF ¶ 8);
- no legally-sufficient WARN Notice was given to the employees (see Section I, supra).

The undisputed facts, as well as Defendants' own additional facts, confirm that, as a matter of law, the only possible conclusion is that Defendants purchased and operated the NECCO business as a going concern. Indeed, Defendants owned and controlled everything necessary to run the business, and ran the business. Defendants are liable under the WARN Act.

### A. **Whether Defendants Reimbursed Employees' Wages or Paid Them Directly to the Employees is Irrelevant.**

Defendants mistakenly rely on the TSA's statement that the former NECCO employees were "deemed" to be the bankruptcy trustees' employees rather than Defendants' employees post-sale. What the parties "deemed" in their agreements does not control the application of the

WARN Act analysis.  Notably, it is undisputed that <u>Defendants</u> had exclusive control over whether employees remained employed and operating the facility (TSA § 1.1) and Defendants were responsible for reimbursing all of the employees "wages, commission, and written employment benefits" (TSA § 2.2).  But that is besides the point.

Upon purchasing the business, Defendants became the workers' employer for purposes of WARN Act liability regardless of whether such employers were <u>ever</u> hired by Defendants. <u>See</u> <u>Day v. Celadon Trucking Services</u>, 827 F.3d 817, 828 (8th Cir. 2016) ("[t]he statute does not require the purchaser to actually hire the seller's employees.  The WARN Act deems a seller's employee to be a purchaser's employee immediately after the effective date of the sale of a business" because under the WARN Act, employees "'as of the effective date of the sale shall be <u>considered</u> an employee of the purchaser immediately after the effective date of the sale'") (emphasis added by <u>Day</u> court); <u>McCafrey v. Brobeck, Phleger & Harrison L.L.P.</u>, No. 03-2082, 2004 WL 345231, at *3 (N.D. Cal. Feb. 17, 2004) (buyer that purchases business as a going concern may be liable to workers who are not hired by buyer).  Defendants' central argument, that they never technically hired the workers (despite paying them), fails as a matter of law.

    **B.**    **Defendants' Own Additional Facts Confirm NECCO Was a Going Concern at the Time of Closing.**

Defendants appear to argue that because they purchased the NECCO business with the intent to run the operations for a short (but indeterminate) period in order to maintain its value, Defendants were not purchasing the business as a going concern.

This argument is deeply flawed and lacks any legal support; there exists no such exemption from the WARN Act's express going-concern provisions.  Moreover, the limited additional facts asserted by the Defendants – mainly in the form of an affidavit from their

manager, Michael Cramer, and various sale documents – demonstrate why, even if proven, Defendants' facts do not matter.

Specifically, Cramer confirms that Defendants made the decision to close the facility months after the purchase: it was not until July 24, 2018 that "Sweethearts decided to sell its interests … and announced the operations in the Facility would be closed." Cramer Aff. ¶9. Defendants very well <u>could</u> have complied with the WARN Act requirements during that time. This fact further demonstrates why the bankruptcy Order does not help Defendants.  The Order served only to protect Defendants from <u>pre-sale</u> liability for actions taken by the debtor NECCO. The Order did not, and could not, give Defendants carte blanche immunity to violate the workers' rights in shutting down the facility after Defendants acquired the business and continued production at the facility.  Defendants are liable for their own post-sale decision to close the plant without complying with the WARN Act.

Next, Cramer speculates about the intent of sale documents actually drafted by the bankruptcy trustee and <u>another</u> bidder, to suggest that the intent was to possibly purchase and then liquidate the NECCO business. Cramer Aff., ¶4.  Nowhere does Cramer identify Defendants' actual intent in purchasing the business.  But Defendants' intent is irrelevant: the employees were entitled to WARN notice because Defendants purchased a going concern, regardless of whether Defendants did so in order that they may, or may not, have been able to sell off the business to others in the future.

Moreover, the actual terms of the documents on which Defendants rely, reiterate that the sale was of a going concern.  The very first paragraph of the Motion for Private Sale recites that, through the sale, the bankruptcy trustee sought "to preserve the stewardship of [NECCO]." Cramer Ex. 1, intro.  Critically, the Motion for Private sale then explains, in its 5th paragraph,

that **"the existing sale process is warranted because of the likelihood that [NECCO] will be able to conclude a sale of substantially all of the Debtor's assets <u>as a going concern</u>."** Cramer Ex. 1, ¶5. (emphasis added). The bankruptcy trustee sought bankruptcy approval to consummate the sale quickly so the business could be sold "as a going concern." <u>Id.</u>

Even Defendants' own spin is that the sale documents were "specifically designed to allow the Debtor **to continue operating** for a short time as the bidder marketed and resold the Debtor's tangible and intangible assets…" Cramer Aff. ¶ 4 (emphasis added).

The License Agreement similarly shows that Defendants were to continue to operate the business as a going concern.  Defendants argue that the License Agreement somehow shields them from WARN liability because Defendants did not have a guaranteed location for the business operations after November 2018.  But that is irrelevant – Defendants were operating the business after the sale, and shut it down without notice to the employees.  What was anticipated by Defendants to occur in November 2018 has no bearing on their obligations in shutting down the ongoing operations prior to that date.[1]

The License Agreement also does not help Defendants' suggestion that they could not be operating the facility.  The license expressly grants the rights to Sweethearts for "the sole purpose of maintaining and <u>operating</u> the Facility…" Cramer, Ex. 2, 6th Whereas Clause (emphasis added).  The landlord gave the License to Sweethearts, not the bankruptcy trustee, to operate the facility after the closing of the sale of the business to Defendants.  In fact, the seller, the bankruptcy trustee, needed Sweethearts' permission to even go onto the property. <u>Id.</u>, ¶ 1.

---

[1] Notably, Defendants, however, could have negotiated a new lease, moved the operations, sold the business as a going concern to another purchaser (as they appear to argue may have been their intent) or, of course, provided WARN notice before November.

In sum, Defendants purchased, and then ran, the factory as a going concern. They bought all the assets to make candy; they ran the plant and made candy; and they even paid the employees to make that candy. Upon the sale of the business as a going concern, Defendants were then "considered" the employer for purposes of WARN liability as a matter of law. It is undisputed that the Defendants thereafter operated the facility before shutting it down. It is undisputed that the Defendants provided neither notice of the shutdown nor payment as required by the WARN Act. Defendants are liable as a matter of law.

C. **Defendants Cannot Manufacture Disputed Facts.**

Defendants repeatedly and improperly assert "lack of knowledge" as a basis for disputing the Employees' statements of facts. See Chapman v. Finnigan, 950 F. Supp.2d 285, 291 n. 3 (D. Mass. 2013) ("party opposing summary judgment cannot create a genuine issue of fact denying statements, which the moving party contends are undisputed and supported by sufficient evidence, on the basis that he lacks knowledge and information to admit or deny the statement"). Defendants even attempt to dispute the fact that they were paying compensation to the employees directly for their tool allowances – so the employees could operate the plant after the sale to Defendants – by stating that Defendants lack knowledge of their own actions. SOF ¶ 10.

Defendants offer nothing, and can offer nothing, to dispute the material facts; the facts are deemed admitted. See Local Rule 56.1. Accordingly, Defendants' last-straw defense to summary judgment – that they lack knowledge on such clear-cut issues as the number of employees (Opp., at p. 18) – fails.

**Conclusion**

For all of the foregoing reasons and those set forth in the Employees' opening Memorandum, whether Defendants purchased the NECCO business as a "going concern" and

were therefore required to provide WARN Act notice or payment, is a question of law.  Based on all of the undisputed facts and those conceded by Defendants, there are no additional facts in dispute material to that legal question, and summary judgment should enter on liability.

Dated:  October 25, 2018

/s/ Josh Gardner
Nicholas J. Rosenberg (BBO No. 657887)
Josh Gardner (BBO No. 657347)
GARDNER & ROSENBERG P.C.
1 State Street, 4th Floor
Boston, MA 02100
Tel: 617-390-7570
Fax: 617-972-7983
nick@gardnerrosenberg.com

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 25, 2018.

/s/ Josh Gardner