UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DEXTER MAIN and FRANCESCO D'AMELIO, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SCS SERVICES LLC and ROUND HILL INVESTMENTS LLC,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 18-cv-11586-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

On April 3, 2018, certain creditors of New England Confectionery Company ("NECCO") filed an involuntary bankruptcy petition. In re New England Confectionary Company, Inc., Case No. 18-bk-11217 (Bankr. D. Mass. Apr. 3, 2018), ECF No. 1, (the "Bankruptcy Case"); [ECF No. 1 ¶ 8].  Round Hill Investments LLC ("Round Hill") then purchased substantially all of NECCO's assets from the bankruptcy estate on May 31, 2018, including a facility in Revere, Massachusetts ("Revere Facility"), and formed Sweethearts Candy Co. (now SCS Services LLC, "Sweethearts") to manage the purchased NECCO assets.  [ECF No. 1 ¶ 10–17].  Pursuant to a transition services agreement entered into between Round Hill and NECCO, NECCO agreed to continue to employ its workers at the Revere Facility through November 30, 2018 and to handle personnel matters as it had in the past.  [ECF No. 1 ¶ 17; ECF No. 5-1 at 54].  Plaintiffs claim that on July 24, 2018, Defendants announced that they were ceasing production at the Revere Facility and then terminated the workers without providing the required advanced notice.  [ECF No. 1 ¶¶ 21–27].

Thereafter, on July 27, 2018, Plaintiffs filed this action against Sweethearts and Round Hill (together "Defendants") alleging a failure to notify the employees that they were about to shut down the operations of the facility purchased from NECCO as required by the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101 *et seq*. On August 13, 2018, Defendants asked to have the case referred to the Bankruptcy Court, asserting that "it arises out of and relates to the facts and circumstances of the pending" Bankruptcy Case. [ECF No. 5 at 1].

Defendants aver that the case should be referred to the Bankruptcy Court for a variety of reasons, including that it would not exist but for the NECCO bankruptcy and because the dispute is inextricably intertwined with the Defendants' acquisition of NECCO's assets from the bankruptcy estate pursuant to an agreement approved by the Bankruptcy Court. [ECF No. 5 at 1–2]. Defendants also claim that because debtor NECCO agreed to employ its workers through November 2018, NECCO is liable under an indemnification provision of the Bankruptcy Court's Sale Order for any liability Defendants have under the WARN Act. See [ECF No. 5-1 at 44, 54]. Finally, according to Defendants, the facts and circumstances surrounding the shut-down of the facility and the disclosures made by NECCO in connection with the sale are the subject of a pending lawsuit in the Bankruptcy Court, and Defendants want to join NECCO as a defendant but can only do so in the Bankruptcy Case because of the automatic stay associated with the bankruptcy. [ECF No. 5 at 3]; Murphy v. Round Hill Investments, LLC (In re New England Confectionery Co., Inc.), Adv. Pro. 18-01091-MSH (Bankr. D. Mass.).

Plaintiffs respond that this action is not related to the Bankruptcy Case and further, that the Bankruptcy Court lacks jurisdiction both because the conduct at issue occurred after the

assets were purchased from the bankruptcy estate and because NECCO is not a party to the Bankruptcy Case.  [ECF No. 6].

## I.  BANKRUPTCY COURT JURISDICTION

The jurisdiction of the district court is based upon 28 U.S.C. § 1334, which provides jurisdiction over: "all cases under title 11" as well as "civil proceedings arising under title 11, or arising in or related to cases under title 11."  "In turn, 28 U.S.C. § 157 permits the district courts to refer to bankruptcy courts all 'proceedings arising under title 11 or arising in or related to cases under title 11.' This broad jurisdictional grant allows the bankruptcy courts to 'deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" Gupta v. Quincy Med. Ctr., 858 F.3d 657, 662 (1st Cir. 2017).  Consistent with the authority granted by 28 U.S.C. § 157, Local Rule 201, provides that any case "arising under Title 11 or arising in or related to a case under Title 11 shall be referred to the judges of the Bankruptcy Court for the District of Massachusetts."  Thus, a case may be referred to the bankruptcy court if it (1) "arises under" title 11, (2) "arises in" a title 11 case, or (3) is "relate[s] to" a title 11 case.

"The 'arising under' language of § 1334(b) is analogous to the 'arising under' language in 28 U.S.C. § 1331."  In re Middlesex Power Equip. & Marine, Inc., 292 F.3d 61, 68 (1st Cir. 2002).  "[P]roceedings 'aris[e] under title 11' when the Bankruptcy Code itself creates the cause of action."  Gupta, 858 F.3d at 662.  Claims "arising in" bankruptcy are claims that "by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case," and include administrative matters and orders to turn over property of the estate.  Id. at 662–63 (quoting Stoe v. Flaherty, 436 F.3d 209, 218 (3d Cir. 2006)).

"By contrast, 'related to' proceedings are those which 'potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or

otherwise have an impact upon the handling and administration of the bankrupt estate.'" Gupta, 858 F.3d at 663. "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984) (emphasis removed), adopted in part by Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995), overruled in part by Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Id.

## II. DISCUSSION

Here, the case does not arise in or under title 11 because a WARN Act violation can arise outside of a bankruptcy. Gupta, 858 F.3d 657. The Plaintiffs have therefore focused on the "related to" jurisdiction established by Pacor in opposing the Defendants' request. In Pacor, despite the broad "any effect on the estate" language, the Third Circuit concluded that the claim against Pacor, an asbestos distributor, was not related to the bankruptcy of the original manufacturer of the asbestos where "Pacor [was] not a contractual guarantor of [debtor], nor [had] [debtor] agreed to indemnify Pacor, and thus a judgment in the . . . action could not give rise to any automatic liability on the part of the estate." 743 F.2d at 995. The Third Circuit since has cautioned against a broad reading of the "related to" test noting that "[t]he test articulated in Pacor for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit." In re Fed.-Mogul Global, Inc., 300 F.3d 368, 382 (3rd Cir. 2002).

Nonetheless, as the Defendants note, the Bankruptcy Court in this district has previously concluded that "there is 'related to' jurisdiction over proceedings where neither the debtor nor the estate is a named defendant if the defendant has indemnification rights against the debtor or the estate." In re Gold, 247 B.R. 574, 578 (Bankr. D. Mass. 2000) (citing Philippe v. Shape, Inc., 103 B.R. 355 (D.Me.1989); Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.), 810 F.2d 782 (8th Cir.1987); A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.), 788 F.2d 994 (4th Cir. 1986)).

Plaintiffs contend that the statement in In re Gold was dicta and is contradicted by more recent case law from outside the First Circuit that is less permissive of "related to" jurisdiction based upon indemnification claims. Principally, Plaintiffs point to In re LTC Holdings, Inc., which concluded that no "related to" jurisdiction exists where (1) the action against the party seeking indemnification does not automatically result in the debtor's liability for indemnification, and (2) a subsequent lawsuit against the debtor is required prior to a determination of indemnification. 587 B.R. 25 at 37 (Bankr. D. Del. 2018) (quoting Bank of New York, Mellon Trust Co., NA v. Becker (In re Lower Bucks Hosp.), 488 B.R. 303, 314 (E.D. Pa. 2013)). The court in In re LTC Holdings, Inc. ultimately found "related to" jurisdiction because the indemnification clause at issue obligated the debtor to indemnity the defendant, a former executive, to the maximum extent permitted under law and was therefore essentially automatic. Id. at 31.

Plaintiff's reliance on Pacor and its progeny, which focus on the effect of pre-bankruptcy indemnification clauses, overlooks the broader nature of the jurisdictional inquiry. See In re Boston Reg'l Med. Ctr., Inc., 410 F.3d 100, 107 (1st Cir. 2005) ("The language of the jurisdictional statute, 28 U.S.C. § 1334, is protean, and what is 'related to' a proceeding under

title 11 in one context may be unrelated in another.").  There are circumstances present in the instant case which distinguish this case from those discussed above such that the case may have an effect on the estate being administered in bankruptcy and therefore fall within the <u>Pacor</u> framework, despite the fact that the indemnification clause may not automatically make NECCO liable to Plaintiffs.  First, the indemnification clause at issue is actually part of the Bankruptcy Court's Sale Order; second, the facts and circumstances surrounding the shut-down are already the subject of a proceeding before the Bankruptcy Court; and third, Plaintiffs were purportedly employed by debtor NECCO at the time of the alleged WARN Act violation.  As such, this case appears to have a sufficiently close nexus to the bankruptcy proceeding to establish "related to" jurisdiction.  See <u>In re Shenango Grp. Inc.</u>, 501 F.3d 338, 343 (3rd Cir. 2007) ("[T]he essential inquiry . . . is whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction." (citation omitted)).

### III. CONCLUSION

Accordingly, the case is referred to the United States Bankruptcy Court for the District of Massachusetts as related to <u>In re New England Confectionary Company, Inc.</u>, No. 18-bk-11217 (Bankr. D. Mass.).  The Court refers the case primarily because it concerns parties already involved in the bankruptcy case, is closely linked to orders issued by the Bankruptcy Court, and may affect the administration of the estate.

**SO ORDERED.**

November 14, 2018 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE